IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

SZ DJI TECHNOLOGY CO. LTD.,
    Plaintiff,

v.                                                                           Civil No. 1:23cv931 (DJN)

BELL TEXTRON INC. *et al.*,
    Defendants.

**MEMORANDUM OPINION**

Plaintiff SZ DJI Technology Co. Ltd. ("DJI") brings this action against Defendants Bell Textron Inc. ("Bell") and Bell Textron Canada Ltd. ("Bell Canada") (collectively "Defendants"), alleging patent infringement claims. This matter comes before the Court on three motions. First, Defendants filed their Motion to Transfer, Or, In the Alternative, To Stay ("Motion to Transfer or Stay" (ECF No. 32)), moving the Court to transfer this action to the Northern District of Texas or to stay this case. Second, Bell Canada filed its Motion to Dismiss for Lack of Personal Jurisdiction ("12(b)(2) Motion" (ECF No. 26)), moving the Court to dismiss this action with respect to Bell Canada pursuant to Federal Rule of Civil Procedure 12(b)(2). And, lastly, Defendants filed their 12(b)(6) Motion to Dismiss Pre-Suit Willful Infringement, Pre-Suit Induced Infringement and Pre-Suit Contributory Infringement ("12(b)(6) Motion" (ECF No. 29)), moving the Court to partially dismiss this action for failure to state a claim upon which relief can be granted.

For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART Defendants' Motion to Transfer or Stay (ECF No. 32). The Court will TRANSFER this case to the Northern District of Texas, the more appropriate and convenient forum for this case. As

such, the Court will refrain from addressing Defendants' 12(b)(6) Motion (ECF No. 29) to allow the transferee court to make a ruling. In addition, the Court will DENY AS MOOT Bell Canada's 12(b)(2) Motion (ECF No. 26).

## I.  BACKGROUND

### A.  Factual Background

#### 1. The Parties and Accused Products

Bell Textron Inc. is a Texas-based provider of commercial and military aircraft. (Defs.' Mem. Supp. Mot. Transfer or Stay ("Defs.' Mot.") (ECF No. 33) at 3.) Bell is incorporated in Delaware with its headquarters and principal place of business in Fort Worth, Texas. (Defs.' Mot. Ex. 4 at ¶ 1.) Bell designs, develops and tests its aircraft — including the accused products — at its Fort Worth headquarters, where it employs approximately 5,000 people. (Bailey Decl. ¶ 6.) As such, the employees most knowledgeable about the design and development of Bell's commercial helicopters are primarily located in Fort Worth. (*Id.*) In addition, all documents relevant to design, development, marketing and sales are located at Bell's headquarters. (Reply at 10.) Accordingly, Bell refers to its headquarters as the "strategic center" of its business. (Bailey Decl. ¶ 6.)

Bell maintains a lone office, known as the Advanced Vertical Lift Center ("ALVC"), in Crystal City, Virginia. (*Id.* ¶ 14.) The ALVC is used to meet customers and market two aircraft — neither of which are accused of infringement in this case — that are sold exclusively to the United States Government. (*Id.*; Defs.' Mot. at 3.)

Bell Textron Canada Ltd. is a Canadian corporation with its principal place of business in Mirabel, Canada. (Boucher Decl. ¶ 2.) Bell Canada's manufacturing facility is located in Canada, and all of its employees, offices, and operations are also located in Canada. (*Id.* ¶ 3.)

DJI is a Chinese corporation with its principal place of business in Shenzhen, China. (Defs.' Mot. Ex. 5 at ¶ 1.) DJI designs and manufactures drones in China and sells its drones in the United States through its website, a small number of company-owned stores, and third parties like Wal-Mart. (Defs.' Mot. at 2.) DJI is the assignee and sole owner of U.S. Patent Nos. 9,126,693 ("'693 Patent"), 9,958,874 ("'874 Patent"), 10,692,387 ("'387 Patent") and 10,904,755 ("'755 Patent") (collectively "Asserted Patents"). (Compl. ¶¶ 12–15.) Plaintiff has asserted that its prosecuting attorneys for two of the four Asserted Patents may be located in Virginia. (Pl.'s Opp. at 17.) The eight named inventors of the Asserted Patents, however, all appear to reside in China. (*See* Defs.' Mot. Exs. 6–9 (indicating the location of each named inventor).). The Court is not aware of any DJI party witnesses in Virginia or any relevant documents located in this District.

Plaintiff has alleged that Defendants have infringed the Asserted Patents by making, using, offering for sale and/or importing the Bell 407, Bell 407GXi, Bell 505, Bell 412, Bell 429 and Bell 525 helicopters. (Compl. ¶¶ 18, 26, 34, 42.) The accused products were designed, developed and tested in Fort Worth, Texas, with some design and development also occurring in Mirabel, Canada. (Bailey Decl. ¶¶ 7–12.) Except for the Bell 525 helicopter, all of the accused products were assembled in Mirabel, Canada. (*Id.*)

### 2. The Timeline of Events

On March 29, 2023, Plaintiff sued Bell Canada in the United States District Court for the Southern District of New York ("SDNY Suit") for infringement of the '693 Patent and '874 Patent. (Defs.' Mot. Ex. 10.) On July 13, 2023, Plaintiff's counsel sent a letter ("Plaintiff's Letter") to Bell Canada's counsel regarding two different patents — the '387 Patent and '755 Patent. (Defs.' Mot. Ex. 1.) Plaintiff's Letter stated that "DJI will file a complaint against Bell

tomorrow, Friday, July 14, 2023[,] in the United States District Court for the Eastern District of Virginia concerning Bell's infringement of these patents." (*Id.*)

On July 14, 2023, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice pursuant to Federal Rule of Civil Procedure 41 in the SDNY Suit. (Defs.' Mot. Ex. 2.) Later that same day, Defendants filed two declaratory judgment actions in the Northern District of Texas ("NDTX Suits") — one for the two patents at issue in the SDNY Suit and one for the two additional patents identified in Plaintiff's Letter. (Defs.' Mot. Exs. 4–5.) Approximately five hours after the NDTX Suits were filed, Plaintiff filed this action, alleging infringement of the Asserted Patents. (Defs.' Mot. Ex. 11.)

### B.  Procedural History

On August 23, 2023, Defendants filed their Motion to Transfer or Stay (ECF No. 32), moving the Court to transfer this action to the Northern District of Texas or to stay this case. On September 6, 2023, Plaintiff filed its Opposition to Defendants' Motion to Transfer or Stay ("Pl.'s Opp." (ECF No. 37)). On September 12, 2023, Defendants filed their Reply Brief in Support of Their Motion to Transfer or Stay ("Reply" (ECF No. 40)), rendering Defendants' Motion for Transfer or Stay ripe for review.

## II.  ANALYSIS

Defendants seek to transfer this action to the Northern District of Texas ("NDTX") under the first-to-file doctrine and 28 U.S.C. § 1404(a). (Defs.' Mot. at 1.) Plaintiff argues that transfer should be denied, because the anticipatory nature of the NDTX Suits warrants an exception to the first-to-file rule. (Pl.'s Opp. at 9.) Plaintiff also argues that the § 1404(a) analysis weighs in favor of allowing this action to proceed before this Court. (*Id.* at 17–20.)

As a preliminary matter, generally, "the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *see also Hopeman Bros., Inc. v. Cont'l Cas. Co.*, 2017 WL 1381665, at *3 (E.D. Va. Apr. 17, 2017) (explaining that the "second-filed court routinely defers to the first-filed court to determine which court will hear the case"). However, courts in this District have decided first-to-file issues without deferring to the first-filed court when circumstances warranted deviating from the general rule. *See e.g.*, *Wenzel v. Knight*, 2015 WL 222179, at *6 (E.D. Va. Jan. 14, 2015) (analyzing transfer factors when the first-filed court had "yet to take any action on the first-filed [] case"). Because the Bell Defendants still had not effected service of process on DJI in the NDTX Suits at the time that this motion became ripe for review, (*see* Reply at 3), the Court finds good cause to determine the issue of venue transfer as the second-filed court. *See Wenzel*, 2015 WL 222179, at *6 (deciding a first-to-file issue as the second-filed court).

### A. First-to-File Rule

Defendants invoke the first-to-file rule as an independent basis to transfer this case. (Defs.' Mot. at 1.) However, the first-to-file rule does not provide standalone authority to transfer a case. Instead, the doctrine serves as a factor in analyzing transfer under the authority provided by Congress pursuant to 28 U.S.C. § 1404(a). *See Byerson v. Equifax Info Servs., LLC*, 465 F. Supp. 2d 627, 635 (E.D. Va. 2006) (stating that the first-to-file rule is "properly considered as [a] component[] of the interest of justice" factor in the transfer analysis); *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005) (applying the first-to-file rule when analyzing the transfer factors); *Turcotte v. Global Refining Grp., Inc.*, 2021 WL

5149707, at *4 (E.D. Va. Nov. 4, 2021) (same). Accordingly, the Court will analyze Defendants' venue transfer request under the statutory framework provided by Congress.

### B.   Transfer Under 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" if the transferee district constitutes a more convenient venue for the parties and witnesses. *Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 502 (E.D. Va. 2012) (quoting 28 U.S.C. §1404(a)). The decision whether to transfer venue rests within the sound discretion of the district court. *S. Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956). The party seeking transfer carries the burden of showing that the § 1404(a) factors warrant transfer to a more convenient venue. *Original Creatine Pat. Co., Ltd. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 566 (E.D. Va. 2005).

Courts follow a two-step inquiry in determining whether to transfer venue under § 1404(a). *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). First, the court must determine "whether the claims might have been brought in the transferee forum." *Id.* Second, the court must consider "whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Id.* As part of the second inquiry, the Court typically weighs the following factors: (1) the plaintiff's choice of venue, (2) the convenience of the parties, (3) witness convenience and access, and (4) the interest of justice. *E.g.*, *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010). A district court's decision to transfer to a more convenient forum depends on the particular facts of each case, because § 1404(a) "provides no guidance as to the weight" that courts should afford each factor. *Samsung*, 386 F. Supp. 2d at 716.

### 1. The Northern District of Texas is a proper venue.

The Court must initially determine whether Plaintiff could have brought this action in the transferee forum. The patent venue statute provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, *or* where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added). For the purposes of § 1400(b), a domestic corporation "resides" only in its state of incorporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262 (2017). Venue over foreign corporations, however, is proper in any judicial district. 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018) (affirming that venue laws do not restrict where a foreign corporation may be sued following *TC Heartland*).

Venue properly lies in the NDTX as to Bell and Bell Canada. While Bell constitutes a Delaware corporation and thus does not reside in Texas for the purposes of § 1400(b), venue properly lies in the NDTX, because Bell "has committed acts of infringement and has a regular and established place of business" in that District. 28 U.S.C. § 1400(b). The accused products (the Bell 407, Bell 407GXi, Bell 412, Bell 429, Bell 505 and Bell 525 helicopters) were designed, developed and tested in Fort Worth, Texas. (Compl. ¶¶ 18, 26, 34, 42; Bailey Decl. ¶¶ 7–12.) In addition, Bell employs approximately 5,000 people at its Fort Worth headquarters, which is considered the "strategic center of Bell's business." (Bailey Decl. ¶ 6.) Since Bell has allegedly engaged in infringing activity and maintains a regular and established place of business in Fort Worth, venue properly lies in the NDTX as to Bell. *See* 28 U.S.C. §1400(b). In addition, venue is proper as to Bell Canada in the NDTX, because it is a foreign corporation. *See* 28 U.S.C. § 1391(c)(3). Thus, Plaintiff could have brought this action in the transferee forum.

### 2. The § 1404(a) balancing factors weigh in favor of transfer.

Next, the Court must consider (1) the plaintiff's choice of venue, (2) the convenience of the parties, (3) witness convenience and accesss, and (4) the interest of justice. *Heinz Kettler GMBH*, 750 F. Supp. 2d at 667. The balance of these factors supports transferring this action to the NDTX for the following reasons.

#### a. Plaintiff's Choice of Forum

Generally, a plaintiff's "choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007). However, courts do not afford substantial weight to a plaintiff's chosen forum "if the chosen forum is not the plaintiff's 'home forum,' and the cause of action bears little or no relation to the chosen forum." *Lycos v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007). Rather, if little connection exists between the plaintiff's claim and his chosen forum, that "weigh[s] in favor of transfer to a venue with more substantial contacts." *Koh*, 250 F. Supp. 2d at 635.

Here, Plaintiff's choice of forum does not warrant substantial weight, because the Eastern District of Virginia ("EDVA") is not Plaintiff's home forum and bears only a tenuous connection to Plaintiff's claim. As DJI constitutes a Chinese corporation, Plaintiff does not attempt to argue that the EDVA is Plaintiff's home forum. Rather, Plaintiff offers three "factual and logical connection[s]" between Plaintiff's claims and this District to support its choice of forum. (Pl.'s Opp. at 17.) First, "as a foreign applicant for United States patents, SZ DJI subjected itself to the jurisdiction of federal courts in this District." (*Id.*) Second, Plaintiff's "patent prosecutors for two of the four Asserted Patents appear to be based in the state of Virginia within this Court's

subpoena power." (*Id.*) Third, Plaintiff argues that Defendants' infringing products have connections to this District. (*Id.*)

The Court rejects these arguments. Considering the United States Patent and Trademark Office is headquartered in Alexandria, Virginia,[1] the fact that Plaintiff has subjected itself to the jurisdiction of this District and may have prosecuting attorneys located within this Court's subpoena power does not constitute a genuine factual connection; the same could be said for a plethora of patent infringement claims. The Court also disagrees with Plaintiff's suggestion that Bell's infringing products have significant connections to the EDVA. While Bell operates the AVLC in this District, the activities conducted at that office are unrelated to the accused helicopters at issue in this litigation. (Bailey Decl. ¶ 14.) Rather, the AVLC is used to market two aircraft — neither of which are accused of infringement in this case — that are sold exclusively to the U.S. Government. (Defs.' Mot. at 3.) The evidence cited by Plaintiff does not controvert Defendants' declaration that its AVLC relates to sales of unaccused military aircraft. (*See* Pl.'s Opp. Ex. D (describing the visit as an "up-close look at Bell's plan for the US Department of Defense's Future Vertical Lift"); Pl.'s Opp. Exs. E–G (failing to mention any accused aircraft).). Furthermore, the Virginia State Police's use of six Bell aircraft "does not create a connection sufficient to justify imbuing the plaintiff's choice of forum with substantial weight." *Macronix Int'l Co. v. Spansion Inc.*, 2014 WL 934521, at *2 (E.D. Va. Mar. 10, 2014); *see also Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 938 (E.D. Va. 2001) (affording the plaintiff's choice of forum "very slight weight" where sales were not "unique to Virginia"). Lastly, the mere mention of the accused Bell 525 helicopter in an article pitching the unaccused

---

[1] *USPTO Locations*, U.S. PAT. & TRADEMARK OFF., https://www.uspto.gov/about-us/uspto-office-locations (last visited Sept. 29, 2023).

Bell 360 Invictus as the Army's next attack helicopter could not possibly entitle Plaintiff to great deference of its chosen forum. (*See* Pl.'s Opp. Ex. H.) In conclusion, the Court finds that the operative facts have no material connection with the EDVA, and thus, Plaintiff's choice of venue will be accorded minimal weight.

Additionally, the lack of nexus between the EDVA and Plaintiff's claim favors transfer to the NDTX, which holds more substantial contacts to this action. *See Koh*, 250 F. Supp. 2d at 635. Bell is headquartered and has its principal place of business in Fort Worth, Texas. (Bailey Decl. ¶ 2.) Bell's headquarters serve as the strategic center of its business and house approximately 5,000 employees. (*Id.* ¶ 6.) And, notably, all of the accused helicopters were — either primarily or in part — designed, developed and tested in Fort Worth, Texas. (*Id.* ¶¶ 7–12.) Because the facts identified by the parties implicate the NDTX and have no meaningful ties with the EDVA, this factor favors transfer to the NDTX.

### b. Convenience of the Parties

In assessing this factor, courts consider the "ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." *Samsung*, 386 F. Supp. 2d at 717 n.13. Transfer to another venue should not occur merely to shift the hardships from one party to the other. *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 955 (E.D. Va. 1998). As the moving parties, Defendants must demonstrate that the EDVA constitutes an inconvenient forum in which to litigate and that Plaintiff would not be substantially inconvenienced by the transfer. *Samsung*, 386 F. Supp. 2d at 718 n.15.

Defendants have persuasively argued that this factor favors transfer. Specifically, Defendants contend that the NDTX offers a more convenient forum for the parties, because "Bell's headquarters is where the sources of proof will reside, and the cost of obtaining

attendance of Bell's witnesses — who will make up the vast majority of witnesses in this case — will be far lower in the Northern District of Texas than in Virginia." (Defs.' Mot at 14.) Plaintiff responds by noting that most of the accused helicopters are manufactured in Canada and that a substantial amount of the design, development and testing of the accused helicopters occurred in Canada. (Pl.'s Opp. at 19–20.)

The bulk of the evidence related to patent infringement actions "typically involve[s] the testimony of those associated with the development and production of the allegedly infringing product." *Hunter Eng'g Co. v. ACCU Indus., Inc.*, 245 F. Supp. 2d 761, 775 (E.D. Va. 2002). While most of the accused helicopters are manufactured in Canada and some design, development and testing for certain accused products occurred in Canada, the center of infringing activity — at least in the United States — is Fort Worth. Defendants have indicated that Fort Worth serves as the "strategic center" and home to "almost all" of Bell's witnesses. (Bailey Decl. ¶¶ 6, 17.) The employees that design and develop Bell's commercial helicopters are primarily located in Fort Worth. (*Id.* ¶ 6.) Moreover, Defendants have stated that all of the relevant documents ranging from design, development, marketing and sales are located at Bell's headquarters. (Reply at 10.) Given that the majority of relevant witnesses and documents are located in the transferee forum, Defendants have demonstrated that the NDTX will afford easier access to sources of proof and impose a lower cost of obtaining the attendance of witnesses.

Defendants have also shown that Plaintiff would not be substantially inconvenienced by the transfer. The parties dispute whether the NDTX or EDVA constitutes a more convenient venue for Plaintiff. (Defs.' Mot. at 15; Pl.'s Opp. at 20.) Notably, however, Plaintiff is not at home in Virginia. Rather, DJI constitutes a Chinese corporation with its principal place of business in Shenzhen, China. (Defs.' Mot. Ex. 5 at ¶ 1.) International travel will undoubtedly be

burdensome wherever this case is litigated. However, it does not appear that travel to the NDTX carries less burden for DJI than travel to the EDVA. (*See* Defs.' Mot. Ex. 14 (comparing flight options).) Furthermore, the Court is not aware of any party witnesses or relevant documents located in this District. Thus, Plaintiff will not be substantially inconvenienced by transferring this action to the NDTX. Accordingly, the Court finds that the convenience of the parties weighs in favor of transfer.

### c. Witness Convenience and Access

In evaluating witness convenience, courts draw "a distinction between party-witnesses and non-party witnesses and affords greater weight to the convenience of non-party witnesses." *Lycos, Inc. v. TiVo Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007). Greater weight is given to witnesses "whose testimony is central to a claim and whose credibility is also likely to be an important issue." *Id.* On the other hand, this factor becomes less important when the appearance of witnesses can be secured through persuasion by an employer who is a party to the action. *Samsung*, 386 F. Supp. 2d at 719.

The party asserting witness inconvenience "has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 871 (E.D. Va. 2013). However, courts have noted a tension between the duty to file transfer motions early in the action and the need to support that motion with affidavits identifying witnesses and the materiality of their testimony, information that may not be known until later in the case. *Affinity Memory*, 20 F. Supp. 2d at 955. A court may infer, "absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses

involved in the design and manufacture of the accused products are material." *Glob. Tel Link Corp. v. Securus Techs. Inc.*, 2014 WL 860609, at *6 (E.D. Va. Mar. 5, 2014). Thus, in *Global Tel Link Corp.*, the Court found witness inconvenience where the defendant had not identified specific testifying witnesses but instead asserted that witnesses were "located where the alleged unlawful activities took place — the center of activity of the case." *Id.*

Plaintiff argues that this case is similar to *Virginia Innovation*, and thus, Defendants have failed to provide sufficient details to establish witness inconvenience. (Pl.'s Opp. at 21.) In *Virginia Innovation*, the alleged infringers moved to transfer venue pursuant to § 1404(a). 928 F. Supp. 2d at 867. In asserting inconvenience, the alleged infringers proffered that "all potential witnesses with knowledge concerning the accused products and their sale in the United States are employees who work in South Korea, New Jersey, and Texas." *Id.* at 871. However, the alleged infringers failed to provide any specific details describing how each witness' testimony would be material, despite being given the opportunity to further elaborate during a status conference. *Id.* Thus, the court concluded that it lacked sufficient facts to determine whether the potential witnesses were central to the claim. *Id.*

Unlike the alleged infringers in *Virginia Innovation*, Defendants have proffered sufficient details from which the Court may infer that a significant number of material witnesses will be more conveniently accessed in the NDTX. *See Glob. Tel Link Corp.*, 2014 WL 860609, at *6 ("Although [the defendant] has not identified particular witnesses that will testify in this action, it has reasonably asserted that witnesses are located where the alleged unlawful activities took place — the center of activity of the case."). Notwithstanding the presence of some relevant witnesses and documents in Kansas, Fort Worth constitutes the center of infringing activity in the United States. *See supra* Part 2(B)(2)(b). All of the accused helicopters were — either

13

primarily or in part — designed, developed and tested in Fort Worth, Texas. (Bailey Decl. ¶¶ 7–12.) Moreover, Defendants have specified that the employees most knowledgeable about the design and development of Bell's commercial helicopters are primarily located in Fort Worth, the center of infringing activity. (*Id.* ¶ 6.) Thus, while Defendants have not provided identities of any witnesses, this Court may infer from the proffered details that Bell's employees who designed the allegedly infringing products are material to the patent infringement claim.

With regard to Plaintiff's witnesses, the patent prosecutors for two of the four Asserted Patents may be located in Virginia. (Pl.'s Opp. at 17.) The eight named inventors of the Asserted Patents, however, all appear to reside in China. (*See* Defs.' Mot. Exs. 6–9 (indicating the location of each named inventor).). Thus, the majority of Plaintiff's non-party and party witnesses will be required to travel a significant distance no matter where they testify. In contrast to the foreign witnesses, a substantial number of key witnesses reside within the NDTX who would be unnecessarily inconvenienced by having to travel away from home to testify in the EDVA. *See In re Genetech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (according less weight to the inconvenience of foreign witnesses). While some inconvenience will shift to Plaintiff by requiring two potential witnesses to travel to the NDTX, the Court finds that this factor weighs in favor of transfer since a substantial number of material witnesses reside within the transferee venue.

### d. Interest of Justice

"The interest of justice encompasses public factors aimed at systemic integrity and fairness," with the most prominent considerations being "judicial economy and avoidance of inconsistent judgments." *Byerson*, 467 F. Supp. 2d at 635. Systemic integrity must also account for a party's attempt to game the federal courts through forum shopping. *Samsung*,

14

386 F. Supp. 2d at 721. As relevant here, fairness is assessed by considering the interest of having local controversies decided at home. *Byerson*, 467 F. Supp. 2d at 635.

Under the first-to-file rule, "when multiple suits are filed in different [f]ederal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Gibbs v. Haynes Invs., LLC*, 368 F. Supp. 3d 901, 914 (E.D. Va. 2019) (quoting *Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982)). The first-to-file rule exists to avoid duplicative litigation and conserve judicial resources. *Byerson*, 467 F. Supp. 2d at 635. "Application of the first-to-file rule is generally a matter for a district court's discretion, exercised within governing legal restraints." *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).

Under Fourth Circuit case law,[2] "the first suit should have priority, absent the showing of balance of convenience in favor of the second action." *Ellicott Mach. Corp. v. Mod. Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974). The Fourth Circuit has implicitly recognized that special circumstances may warrant an exception to the first-to-file rule in cases involving procedural fencing and forum shopping. *Gibbs*, 368 F. Supp. 3d at 915; *see also Elderberry of Weber City, LLC v. Living Ctrs.-Se., Inc.*, 2013 WL 1164835, at *4 (W.D. Va. Mar. 20, 2013) (collecting cases). Other scenarios that give rise to exceptions include bad faith and anticipatory suits. *Samsung*, 386 F. Supp. 2d at 724.

An anticipatory filing is improper when it attempts to exploit the first-to-file rule by securing a different venue from one that the filer's adversary would be expected to choose. *Id.*; *see also Learning Network Inc. v. Discovery Commc'ns, Inc.*, 11 F. App'x 297, 301 (4th Cir.

---

[2] The Federal Circuit reviews transfer determinations under the law of the regional circuit in which the district court sits. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

2011) ("[T]here may come a point after which the potential lawsuit that may otherwise have given rise to a proper declaratory judgment action has become so certain or imminent, that the declaratory judgment action is merely an improper act of forum shopping, or a race to the courthouse."). For instance, a court concluded that the defendant filed an anticipatory suit when it "beat [the] patent owner to a courthouse . . . by a matter of hours" after the patent owner shared "a courtesy copy of the complaint that we *will* file [the next day] in the United States District Court." *Google LLC v. Sonos, Inc.*, 2020 WL 6822880, at *2 (N.D. Cal. Nov. 20, 2020) (emphasis in original).

The present action and the NDTX Suits fall within the scope of the first-to-file rule. The uncontested facts indicate that on July 14, 2023, Defendants filed two complaints in the NDTX, seeking a declaratory judgment of non-infringement of the Asserted Patents. (Defs.' Mot. Exs. 4–5.) Later that same day, Plaintiff filed its Complaint (ECF No. 1) in the EDVA, alleging infringement of the same patents. The two actions are a mirror-image of one another and involve the same parties, patents and substantive issues. Accordingly, Plaintiff has not contested that the NDTX Suits precede this action or that these actions fall within the scope of the first-to-file rule.

Rather, Plaintiff argues that the NDTX Suits constitute anticipatory suits that warrant an exception to the first-to-file rule. (Pl.'s Opp. at 9.) The Court agrees. First, like the patent owner in *Google v. Sonos*, Plaintiff stated in concrete terms that "DJI will file a complaint against Bell tomorrow, Friday, July 14, 2023[,] in the United States District Court for the Eastern District of Virginia concerning Bell's infringement of these patents." (Defs.' Mot. Ex. 1.) While the letter did not expressly name the '693 Patent and '874 Patent, Defendants were already aware of these patents from the SDNY Suit. Second, in their Complaint for declaratory judgment, Defendants explicitly refer to Plaintiff's Letter as a basis for actual controversy. (Defs.' Mot.

16

Ex. 4 at ¶ 9.) Third, the brevity of the two Complaints suggests that they were prepared in haste. (*See* Defs.' Mot. Exs. 4–5.) And, lastly, by Defendants' own account, Defendants beat Plaintiff to the courthouse by just "[o]ver five hours" — not even by a full day. (Defs.' Mot. at 4.) Because Defendants knew that a lawsuit was imminent and the facts suggest Defendants "raced to the courthouse," the Court finds that the NDTX Suits constitute anticipatory suits.

However, the analysis does not end here. The anticipatory nature of Defendants' NDTX Suits alone is not dispositive. The Federal Circuit has endorsed this factor as "merely one factor in the analysis." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347–48 (Fed. Cir. 2005); *compare Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) (reversing the district court's dismissal of a declaratory action since it was premised solely on the fact that the suit was designed to anticipate a later-filed complaint in another forum) (abrogated on other grounds), *with Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039–40 (Fed. Cir. 1995) (affirming the district court's dismissal of a declaratory action as anticipatory in view of other factors, including the location of witnesses and documents). Thus, despite the Court's finding that Defendants cannot invoke the first-to-file rule to justify transfer, other factors may still warrant transfer to a more convenient venue.

The interest of justice is not served when a plaintiff with no significant ties to this District chooses to litigate here primarily due to its well-earned reputation as the "rocket docket." *Original Creatine Patent Co.*, 387 F. Supp. 2d at 572 (E.D. Va. 2005). The EDVA has been particularly attractive to plaintiffs in complex litigation, such as patent infringement actions, because civil actions quickly move to trial or are otherwise resolved. *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 996 (E.D. Va. 2011) (recognizing that the Court's fast-paced docket invites forum shopping). Here, Plaintiff contends that "[a]s the patentee and

natural plaintiff, SZ DJI has not engaged in forum-shopping by choosing a forum in which venue is proper under the Patent Act." (Pl.'s Opp. at 14.) Even assuming that venue is proper, because Plaintiff's claim has no meaningful nexus to the EDVA, the Court has concerns that Plaintiff's decision to initiate a patent infringement claim in this forum was motivated by the expediency in which the courts of this District are able to process cases. *See Pragmatus AV*, 769 F. Supp. 2d at 996–97 (noting concern of "being swamped with patent infringement cases" that bear a minimal connection to the District). Despite the anticipatory nature of Defendants' NDTX Suits, this Court finds that the interest of justice factor weighs in favor of transfer since this District has no local interest in deciding this controversy. *See Original Creatine Pat. Co.*, 387 F. Supp. 2d at 572 ("In a case brought by a foreign plaintiff against an out-of-state defendant, there is little local interest in having the matter decided in Virginia.").

### III. CONCLUSION

For the reasons set forth above, the Court will GRANT IN PART and DENY IN PART Defendants' Motion to Transfer or Stay (ECF No. 32). The Court will TRANSFER this case to the Northern District of Texas, the more appropriate and convenient forum for this case. As such, the Court will refrain from addressing Defendants' 12(b)(6) Motion (ECF No. 29) to allow the transferee court to make a ruling. In addition, the Court will DENY AS MOOT Bell

Canada's 12(b)(2) Motion (ECF No. 26).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

                                                    /s/
                                        David J. Novak
                                        United States District Judge

Richmond, Virginia
Date: October 6, 2023